UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION et al.,

*Plaintiffs*,

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant*.

Civil Action No. 23-3810 (TJK)

### MEMORANDUM OPINION & ORDER

In the years following the onset of the COVID-19 pandemic, the United States intelligence community evaluated the virus's origins. The two leading theories are that the virus emerged from either a laboratory-associated incident or natural transmission from an animal to a human. According to a few members of Congress, a Central Intelligence Agency whistleblower came forward and claimed that several members of the CIA's investigatory team were paid off to switch their assessment from the lab theory to the natural-transmission theory.

The Heritage Foundation and Mike Howell wanted to learn more about those allegations, so in September 2023 they submitted a request under the Freedom of Information Act for records related to that CIA team. They also asked the agency to expedite the request based on an urgent need to inform the public about this matter. For such an expedition request, FOIA requires the requester to certify that the statement supporting the compelling need for the records is true and correct to the best of his knowledge and belief. But Heritage and Howell's request did not include that mandatory certification. So after they sued the CIA for, among other things, denying the expedition request, the agency moved for judgment on the pleadings as to that claim because of the failure to certify. And it is entitled to that judgment. The statute requires that expedition

1

requests like the one here include the certification, and its omission renders the request deficient. Thus, the Court will grant the CIA's motion. That said, Heritage and Howell's other claims for relief—including their claim that any relevant records have been wrongfully withheld—are unaffected by this ruling. And nothing prevents them from seeking leave to amend or supplement their complaint to the extent they wish to challenge the CIA's handling of their renewed expedition request that they submitted after they fixed their mistake.

## I.     Background

### A.     The Freedom of Information Act

FOIA requires agencies to make records available to any person whose request "reasonably describes such records" and satisfies agency procedures. *See* 5 U.S.C. § 552(a)(3)(A). An agency must determine "whether to comply with such [a] request" within twenty business days of receiving it, plus an extra ten in unusual circumstances. *Id.* § 552(a)(6)(A), (B). If the agency decides to comply with a request, it must make responsive, non-exempt records "promptly available" to the requester. *Id.* § 552(a)(6)(C)(i).

FOIA also creates two paths to a faster track. A requester who establishes "'a compelling need' or" that his request "falls within 'other cases determined by the agency' is entitled to expedited processing of his request," *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020) (quoting § 552(a)(6)(E)(i)), which requires the agency to process the request "as soon as practicable," § 552(a)(6)(E)(iii). Defining those "other cases"—that is, the second path—is a matter of agency discretion. But FOIA itself defines what counts as a compelling need by requiring a showing that (1) non-expedited treatment "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (2) "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." § 552(a)(6)(E)(v). And no

matter which compelling-need option the requester pursues, the "demonstration" of compelling need must "be made by a statement certified by [the requester] to be true and correct to the best of" his "knowledge and belief." § 552(a)(6)(E)(vi).

The CIA has not added any "other cases" that qualify for expedited processing. Instead, the agency's regulations provide for that faster track only in cases of compelling need: the "matter" must "involve[] an imminent threat to" an individual's "life or physical safety," or the information must (among other things) be "relevant to a subject of public urgency." 32 C.F.R. § 1900.34(a).

### B.    Plaintiffs' FOIA Request

In its "Updated Assessment on COVID-19 Origins," the Office of the Director of National Intelligence summarized the results of "several assessments" from the intelligence community "examining the origins of COVID-19." ECF No. 1-5 at 6; *see also* ECF No. 1 ("Compl.") ¶ 2. That report described "two plausible hypotheses on initial human exposure." ECF No. 1-5 at 5. Some analysts assessed that the "natural origin hypothesis"—*i.e.*, natural exposure to an animal carrying the virus—was the more likely explanation. *Id.* at 8. One intelligence community "element," though, "assesse[d] with moderate confidence that COVID-19 most likely resulted from a laboratory-associated incident." *Id.* at 10. Generally, "confidence levels [were] tempered by plausible arguments" on both sides. *Id.* at 8.

In mid-September 2023, several members of Congress sent two letters to the CIA Director after a whistleblower purportedly alerted them to new information about the CIA's assessment of the virus's origins. Compl. ¶¶ 3–4; *see also* ECF No. 1-6; ECF No. 1-7. The chairman of the House Select Subcommittee on the Coronavirus Pandemic wrote that a "senior-level" CIA officer had "come forward" with allegations that six members of the CIA's seven-person "COVID Discovery Team" had initially believed with "low confidence" that "COVID-19 originated from a

laboratory in Wuhan, China." ECF No. 1-6 at 2. Those members, however, allegedly switched to the natural-origin hypothesis after receiving "a significant monetary incentive." *Id.* Four Senators relayed the same whistleblower allegations in their letter. *See* ECF No. 1-7. And the authors of each letter requested "documents and communications" about (and involving) the CIA's COVID Discovery Team. *See* ECF No. 1-6 at 2–3; ECF No. 1-7 at 2–3.

Plaintiffs Heritage Foundation and Mike Howell—the leader of Heritage's Oversight Project and author for *The Daily Signal*—followed up with a FOIA request about a week after the congressional letters. Compl. ¶ 11; ECF No. 1-8. They asked for all records (1) about the establishment of the COVID Discovery Team; (2) "between or among members of" the Discovery Team "regarding the origins of COVID-19"; and (3) "between or among members of" the Discovery Team "and other" CIA "employees or contractors" regarding the virus's origins. ECF No. 1-8 at 2. On top of those records, the request also sought all communications between or among members of the Discovery Team and other federal employees, as well as all "documents and communications regarding the pay history" of the team's members. *Id.*

Plaintiffs also asked for expedited processing. ECF No. 1-8 at 7. Specifically, they asserted that their request met the second test for compelling need—*i.e.*, that a person primarily engaged in disseminating information had requested information "relevant to a subject of public urgency concerning an actual or alleged Federal Government activity." *Id.* at 7–8 (quoting 32 C.F.R. § 1900.34(a)). In Plaintiffs' view, the requested records about the CIA's discovery team—especially given the whistleblower's allegations—are essential to a "free and open debate on the origins of COVID-19." *Id.* at 9. And that debate, in turn, "is vital for enacting informed policies" to "prevent future pandemics" and "hold wrongdoers accountable." *Id.*

The CIA disagreed. Compl. ¶ 26. Plaintiffs' request, the agency explained, did not meet the criteria under § 1900.34(a) and thus did not "establish[] a 'compelling need.'" ECF No. 1-9 at 6. So the CIA "denied" the request for expedition in late October 2023 and informed Plaintiffs of their right to "appeal th[at] decision." *Id.* at 5–6.

Plaintiffs sued the agency about two months later, challenging that denial and several other aspects of the CIA's handling of their FOIA request, including that it wrongfully withheld non-exempt, responsive records. *See* Compl. ¶¶ 22–77. They seek, among other things, an injunction compelling the CIA "to process" the request "on an expedited basis." *Id.* at 14. After answering the complaint, *see* ECF No. 4, the agency moved for judgment on the pleadings as to Count One: the claim for wrongful denial of expedited processing. *See* ECF No. 12.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." When a party does so, he must show "that no material fact is in dispute and that [he] is entitled to judgment as a matter of law." *Dist. No. 1 v. Liberty Maritime Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) (citation omitted). As with a motion under Rule 12(b)(6), the Court may consider "documents attached as exhibits" to "or incorporated by reference in the complaint," and it must "view all facts and draw all inferences in the light most favorable to the non-moving party." *Statewide Bonding, Inc. v. DHS*, 422 F. Supp. 3d 42, 46 (D.D.C. 2019) (citation omitted). In the end, judgment on the pleadings is appropriate "when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (internal quotation marks and citation omitted).

## III.   Analysis

When an agency denies a request for expedited processing, the Court reviews the denial de novo. *See Al-Fayed v. CIA*, 254 F.3d 300, 304, 308 (D.C. Cir. 2001). That review, moreover,

5

must "be based on the record before the agency at the time of the determination." § 552(a)(6)(E)(iii); *see also Al-Fayed*, 254 F.3d at 304. The CIA offers three reasons why its denial was sound. First, the agency says that Plaintiffs failed to comply with the statutory requirement that the requester certify that the "basis for claiming compelling need is 'true and correct to the best of such person's knowledge and belief.'" ECF No. 12 at 8 (quoting § 552(a)(6)(E)(vi)). Second, the CIA argues that Plaintiffs' request does not concern a matter of current exigency to the public, so there is no "urgency to inform" and thus no compelling need. *Id.* at 10. And third, the agency contends that the FOIA request did not "establish that Heritage Foundation is primarily engaged in disseminating information." *Id.* at 15. Because the Court finds that the CIA prevails on the first argument, it need not address the other two.

The CIA offers expedited processing only in cases of compelling need. *See* 32 C.F.R. § 1900.34(a). Unlike other possible grounds for expedited processing, "compelling need" is "defined by FOIA itself." *Al-Fayed*, 254 F.3d at 307. The statute provides that a requester may establish compelling need in one of two ways, and the CIA regulations mirror—as they must—those options. *Compare* § 552(a)(6)(E)(v), *with* 32 C.F.R. § 1900.34(a). But for either option, FOIA requires a certification: "A demonstration of compelling need by a person making a request for expedited processing *shall* be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief." § 552(a)(6)(E)(vi) (emphasis added). Part of establishing a "compelling need," then, is doing so with the statutorily mandated certification. And because FOIA "does not authorize an agency to offer its own definition of 'compelling need,'" an agency cannot tweak that definition either "through case-specific determinations or through regulations." *Al-Fayed*, 254 F.3d at 307. That means, for example, that an agency could not say that a requester satisfies the compelling-need standard by showing only that the failure to

6

expedite would pose a speculative—rather than "imminent"—"threat to" a person's "life or physical safety." § 552(a)(6)(E)(v)(I).

This prohibition on changing the definition of "compelling need" also prevents agencies from doing away with the certification requirement. Congress has mandated that certification for any request seeking expedited processing based on a compelling need, even if—as is true of the CIA—the agency does not repeat that requirement in its regulations. A different rule, after all, "would produce an intolerable situation": "different agencies could adopt inconsistent interpretations of the FOIA and substantially complicate the administration of the Act" by creating agency-specific definitions of and requirements for compelling need despite Congress's statutory definition and requirements. *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

Plaintiffs did not satisfy the certification requirement when they requested expedited processing based on compelling need, so they were not entitled to that processing. Nowhere in the complaint do Plaintiffs claim to have certified that their compelling-need statement was "true and correct to the best of [their] knowledge and belief." § 552(a)(6)(E)(vi). Nor could they have alleged that; Plaintiffs' FOIA request, attached to the complaint, shows that they did not make the required certification. *See* ECF No. 1-8. In this way, Plaintiffs' "request for expedited processing" is deficient under FOIA and thus "could be denied strictly on that basis." *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 241 (D.D.C. 2002).[1]

---

[1] In *Tripp*, Judge Sullivan "address[ed] the substance of the parties' arguments" on expedited processing in part "because neither party ha[d] briefed th[e]" certification "issue." 193 F. Supp. 2d at 241. But his observation about the effect of failing to include the certification tracks straightforward statutory analysis: FOIA requires a requester seeking expedited processing based on a compelling need to make a particular certification, and the failure to do so renders that request deficient.

7

Plaintiffs offer no reason for failing to heed this statutory command. Instead, they contend that because the CIA did not base its denial on the certification requirement at the administrative level, the agency cannot defend its decision on that ground now. ECF No. 13 at 8–9. Plaintiffs also suggest that their non-compliance should be excused because "this is not a case where the certification requirement 'matters.'" *Id.* at 10 n.1. And finally, Plaintiffs note that they "renewed their expedited request with Defendant's demanded 'magic words' certification"—that is, FOIA's statutory requirement—after the CIA moved for judgment on the pleadings, so "this is much ado about nothing." *Id.* at 11. But none of these arguments moves the needle on the narrow issue relevant here: whether the CIA has shown as a matter of law that Plaintiffs cannot prevail on their claim, as alleged in the operative complaint, that the agency wrongfully denied their request for expedited processing.

Plaintiffs insist that that the CIA cannot process an application for expedited processing, deny it "only on the merits," and then argue in court that the application faltered for lack of the certification. ECF No. 13 at 8. To begin, Plaintiffs draw a line between the "merits" and "non-merits" that FOIA does not. The statute instead creates several requirements for a request seeking expedited processing based on compelling need: it must meet one of the definitions in § 552(a)(6)(E)(v), and it must include the certification under § 552(a)(6)(E)(vi). Plaintiffs offer no reason to elevate one statutory mandate over another.

More fundamentally, Plaintiffs misunderstand how the Court reviews denials of expedited processing. That review is de novo, *see Al-Fayed*, 254 F.3d at 308, meaning that the Court makes "a fresh, independent determination of 'the matter' at stake" by "put[ting] itself in the agency's place" and "mak[ing] anew the same judgment earlier made by the agency." *Greenpeace, Inc. v. DHS*, 311 F. Supp. 3d 110, 124 (D.D.C. 2018) (quoting *Doe v. United States*, 821 F.2d 694, 697–

8

98 (D.C. Cir. 1987) (en banc) (R.B. Ginsburg, J.)). Plaintiffs often benefit from this kind of review because it "generally affords no deference to the agency's decisions." *Id.* But they "must take the bitter with the sweet." *Id.* So while review under the Administrative Procedure Act would typically prevent an agency from "defend[ing] its actions in court for reasons that are absent from the administrative record," "all that matters" when reviewing the denial of an expedited-processing request "is whether the agency reached the right outcome." *Id.* at 125. In other words, the *Chenery* principle—which constrains an agency's ability to "rely on *post hoc* rationalizations"—does not help a plaintiff "in the FOIA context" challenging such a denial "because courts review" that "decision . . . *de novo*." *Stevens v. HHS*, 666 F. Supp. 3d 734, 743–44 (N.D. Ill. 2023) (internal quotation marks and citation omitted). So the CIA's failure to flag the certification issue at the administrative level, while understandably frustrating to Plaintiffs, poses no barrier to the agency's reliance on it now.

This result is consistent with and follows naturally from the rule that an agency may "advance new justifications for withholding documents under FOIA once it comes to court." *Greenpeace*, 311 F. Supp. 3d at 125. All that is required in that context is that the agency "assert all exemptions at the same time, in the original *district court*"—not administrative—"proceedings." *Maydak v. DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000) (emphasis added); *see also Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988) (agencies "may assert new [FOIA] exemptions at the federal district court level . . . not previously asserted at the administrative level, even if the circumstances have not changed in the interim"); *Sinito v. DOJ*, No. 87-cv-814 (TFH), 2000 WL 36691372, at *16 (D.D.C. July 12, 2000) (similar). And the Court sees no reason why a different principle would apply to defects in an expedited-processing request. So just as "an agency does not waive FOIA exemptions by not raising them during the administrative process," *Kay v. FCC*,

9

867 F. Supp. 11, 22 (D.D.C. 1994) (quoting *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992)), the CIA did not waive the certification requirement or otherwise lose the ability to rely on it in court.[2]

Plaintiffs also argue that "the certification requirement" neither "matters" nor "does actual work" in this case. ECF No. 13 at 10 n.1. Without saying so explicitly, they seem to suggest that the Court should ignore Congress's requirement because it appears unimportant to them. That is of course a non-starter. Courts "must presume that [the] legislature says in a statute what it means and means in a statute what it says there," *Dodd v. United States*, 545 U.S. 353, 357 (2005), and Congress in no uncertain terms required a specific certification for expedition requests based on compelling need, *see* § 552(a)(6)(E)(vi). The Court "cannot ignore th[at] plain text" even if adhering to it "might lead to some" arguably "unfair results," such as a FOIA plaintiff learning about a statutory misstep for the first time in litigation. *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 282 F. Supp. 3d 190, 198 (D.D.C. 2017).

In any event, requiring the requester to certify that his statement of compelling need is true and correct to the best of his knowledge and belief makes ample sense. These requests, after all, are requests to jump the line of earlier-filed FOIA requests that typically would receive priority. So the certification requirement tempers (or at least tries to temper) overzealous requesters who might exaggerate the urgency of expedition and, in doing so, harm other FOIA requesters. And applying that statutory requirement across the board—rather than, as Plaintiffs seem to prefer, only to cases involving "non-public not otherwise verifiable facts"—is a choice for Congress, not the Court. ECF No. 13 at 10 n.1.

---

[2] The Court need not decide whether an agency could, by engaging in certain conduct, waive the certification requirement or be estopped from relying on it in court. There is no suggestion here that the CIA deliberately omitted the certification defect at the administrative level so that it could spring the defense on Plaintiffs in litigation.

Finally, Plaintiffs say that this is all academic because they "renewed their expedited processing request" with the certification. ECF No. 13 at 11. But that allegation is not in the complaint. Instead, Plaintiffs support this contention with a declaration that attaches the renewed request, which Plaintiffs submitted after the CIA had moved for judgment on the pleadings—and after the pleadings had closed. *See* ECF No. 14-1; *see also* 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1367 (3d ed. June 2024 update) ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer . . . ."). The declaration is thus "extra-pleading matter," so "it is within the district court's discretion whether to accept" this material "on a motion for judgment on the pleadings"—which would require treating the motion "as one for summary judgment"—or "to reject it and maintain the character of the motion as one under Rule 12(c)." Wright & Miller, *Fed. Prac. & Proc.* § 1371; *see also, e.g.*, *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1177 (Fed. Cir. 2020) (holding that "the district court did not abuse its discretion when it set aside [the] declaration"); *Hagan v. Comm'r, Ga. Dep't of Corrs.*, No. 22-12180, 2023 WL 5621895, at *6 (11th Cir. Aug. 31, 2023) (per curiam) (when "reviewing the motion for judgment on the pleadings," "the district court was not obligated to consider an extrinsic document attached to Plaintiff's response").

Because the declaration attempts to inject facts into the record that do not speak to the *original* denial of Plaintiffs' expedited processing request, the Court will not consider Plaintiffs' extra-pleading material. The operative complaint, including incorporated attachments, alleges that the CIA wrongfully denied the expedited-processing request that Plaintiffs submitted in September 2023. *See* Compl. ¶¶ 22–30; ECF No. 1-8 (September 20, 2023 expedited-processing request); ECF No. 1-9 (October 25, 2023 denial of expedited-processing request). *That* is the decision that Plaintiffs allege violated FOIA, and *that* is the decision that the CIA argued—correctly—was

lawful given Plaintiffs' failure to make the required certification under § 552(a)(6)(E)(vi). Put another way, the Court can assess whether the CIA is entitled to judgment on the pleadings on the claim that the agency wrongfully denied the expedition request without considering material that post-dates the challenged decision.

More than that, though—the Court *must* evaluate that decision in this way. FOIA requires courts to review denials of expedited-processing requests "based on the record before the agency *at the time of the determination*." *Al-Fayed*, 254 F.3d at 305 (emphasis added) (quoting § 552(a)(6)(E)(iii)). Plaintiffs submitted their renewed request about five months after the CIA denied expedited processing, so it is not relevant to assessing a complaint focused on the alleged unlawfulness of *that* denial. Whatever the agency has done with the "renewed" expedited-processing request is a different agency action than the October 2023 denial, which assessed whether Plaintiffs had established a compelling need for the records *at that time*—not in March 2024.

In short, Plaintiffs' complaint challenged the CIA's denial of its original request for expedited processing. The CIA moved for judgment on the pleadings because it believed that, based on the complaint and answer, this denial was lawful. Plaintiffs' post-pleadings declaration is not relevant to the lawfulness of that denial, so the Court will not consider it and will instead maintain the Rule 12(c) character of the CIA's motion. As noted above, however, Plaintiffs' other claims for relief—including their claim that any relevant records have been wrongfully withheld—are unaffected by this ruling and will proceed. And of course, nothing prevents Plaintiffs from seeking leave to amend or supplement their complaint to the extent they wish to challenge the CIA's handling of their renewed expedition request.

**IV.    Conclusion and Order**

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion for Judgment on the Pleadings, ECF No. 12, is **GRANTED**. It is further **ORDERED** that judgment is

**ENTERED** in favor of Defendant on Count One of the Complaint.  It is further **ORDERED** that the parties shall file, by February 28, 2025, a joint status report setting forth a proposal for further proceedings.

    **SO ORDERED.**

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: February 13, 2025